UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                Case No. 25-cr-20173
                Hon. BRANDY R. MCMILLION

vs.

ANGELO AINAGA-JASPE,

    Defendant.
_____/

MICHAEL C. MARTIN
United States Attorney's Office
211 West Fort Street
Room 2268
Detroit, MI 48226
313-226-9670
Fax: 313-226-3413
Email: Michael.C.Martin@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant:
    ANGELO AINAGA-JASPE
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
saschulman@comcast.net
_____/

**<u>DEFENDANT, ANGELO AINAGA-JASPE's</u>**
**<u>SENTENCING MEMORANDUM</u>**

NOW COMES the Defendant, ANGELO AINAGA-JASPE, by and through his attorney, SANFORD A. SCHULMAN and states in support of his SENTENCING MEMORANDUM as follows:

## **OVERVIEW**

The defendant, Angelo Ainaga-Jaspe, is 22 years old, with a high school education, father of a minor child, a citizen of Venezuela and a hard worker.  He left Venezuela during a very difficult time and while in the United States he has had several driving related infractions but no other criminal activity including assaults or firearm offenses.  Angelo has been here without any family support and has found employment as a construction worker as well as working as a courier for Door Dash, Amazon and Uber.

Despite being an illegal immigrant, Angelo has had no problem securing employment in the United States.   While employed, he of course received no benefits or health care and sent most of the money back to his family.

The advisory guidelines of 10-16 months are based primarily on the charge of being an alien in possession of firearm and ammunition to which Angelo is prepared to plead guilty.  The Court should take note that the firearm that Angelo possessed with a firearm while he

2

was at a shooting range—Downriver Guns. He was there for no other reason than sport and committed no crime while at the range. Moreover, he used his own name, phone number and email address. The firearm and the ammunition were otherwise legal and never left the premises.

If this had been the typical removal case, Angelo's advisory sentencing guidelines would have likely been closer to 0-6 months. But because he was charged with possession of a firearm and ammunition that he was using at a legal and local shooting range, the base level is 14 with 2 points reduced for acceptance of responsibility.

The case presents a very common and important issue that is present in the US workforce, the strong desire for undocumented workers, who are employed in low paying and the least desirable jobs, but who are often the subject of deportation. U.S. immigration policy has a history of welcoming workers for their labor but excluding them from legal protections and recognition in American society. Today's immigration system is no exception. Despite employers' demands for immigrant labor and public acknowledgment of the essential role that immigrants play in the workforce, current law is not

in tune with the economic realities that are driving the migration process. Federal law provides only 5,000 permanent visas each year to "unskilled" workers, a category that covers most of today's necessary workers. Temporary work visas and family-based avenues for entry are also extremely restrictive; it is not unusual for a Mexican resident to wait seven to nine years for a visa. Thirty-four million immigrants who would prefer to work in the U.S. legally face unreasonable obstacles to entry

     Angelo Ainaga-Jaspe is a perfect example of the dichotomy that has been growing in the American debate on immigration and the need to fill necessary employment. Angelo is a good worker and a hard worker in construction. In fact, there are more than 1.4 million undocumented immigrant workers in construction, accounting for 13 percent of all construction workers. The idea that an undocumented worker reaps all the benefits of the American dream without being a citizen is simply untrue. In fact, Angelo, like so many other undocumented workers, has no social security number, cannot open a bank account, cannot purchase a home and must always live a life knowing that at the turn of any corner, as what happened to Angelo, he can be taken into custody, face federal charges and deported.

4

Angelo has accepted responsibility and pled guilty without filing any motions. He has acknowledged that even though he was able to gain employment and support his minor child, such a life is not sustainable. He is prepared to return to Venezuela and make a life for himself and his family there. It should also be noted that Angelo came to the United States to help assist himself and his family and the firearm possession was not part of any criminal activity.

The advisory sentencing guidelines are calculated at 10 to 16 months. Angelo has been in custody for more than six months since his arrest on February 27, 2025. The defense is requesting a sentence of time served.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

On February 27, 2025 authorities arrested Angelo after a routine traffic stop while was leaving his residence and going to work. He was committing no crime. He was fully cooperative, provided his truthful name and admitted he is a national and citizen of Venezuela. He is prepared to accept responsibility and pled guilty at his first opportunity.

A. <u>PERSONAL CHARACTERISTICS</u>

Angelo is by all accounts a hard worker who provides for his family. He is not assaultive and has no assaultive history. He has a positive outlook on life, is very likeable and has strong family values.

B. Section 3553(a)(2) Factors

Discretion remains an indispensable mitigating safety valve for the law's sometimes destructive and illogical effects. A district judge now has "broad discretion" in imposing a sentence, <u>United States v. Booker</u>, 543 U.S. 220, 233, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), except where Congress has imposed a "mandatory minimum" for a particular offense. The defense takes many of the arguments from the 2nd Circuit Court of <u>United States v. Chong</u>, No. 13-CR-570, 2014 U.S. Dist. LEXIS 135664, at *2 (E.D.N.Y. Sep. 22, 2014

Federal law provides district judges with basic sentencing considerations: it instructs the district court to "impose a sentence sufficient, but not greater than necessary" to achieve the basic aims of sentencing, with sensitivity to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a), (a)(1); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an

offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Section 3553 points judges to the four traditional justifications of the criminal sentence—retribution, deterrence, incapacitation, and rehabilitation—with the command that "each of the four stated purposes should be considered in imposing sentence in a particular case." Kenneth R. Feinberg, The Federal Guidelines and the Underlying Purposes of Sentencing, 3 Fed. Sent'g Rep. 326 (1991) (quoting S. Rep. 98-225 (98th Cong. 1st Sess. 1983)); see also 18 U.S.C. § 3553 (a) (sentence must be "sufficient, but not greater than necessary" to comply with these purposes).

1. Just Punishment

Section 3553(a)(2)(A) provides that the sentencing court shall consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]"  The defense would argue that a lengthy custodial sentence would serve no significant purpose.  The advisory guidelines are 10-16 months.  The defense is requesting a sentence of time served.  The average sentence for similar defendants across the country is nine months or a sentence below

7

Angelo may not get the same good time credits as other US Citizens or the ability to enter a half-way house. Moreover, he will not be able to shorten his sentence by participating in any programs. Moreover, the charge of possession of a firearm and ammunition is overstated given that in this particular case Angelo was at a gun range and was simply in possession of a firearm and ammunition for sport and not for any other reason. He did not have a firearm in his car or his person and the firearm was not stolen nor was it used in an illegal purpose. For this reason, a sentence below the guidelines is recommended.

Angelo has been in jail for six months. There is nothing that supports d sentence beyond the time he has already served to accomplish the goals of 18 USC Sec. 3553(a). Angelo will be punished by deportation out of the county. He understands that any reentry will have a far more significant impact. So he is prepared to be deported and will explore all legal options.

2. Deterrence

For criminal sanctions to "afford . . . deterrence," specific or general, at least three assumptions must be made: "[t]he potential offender must know of the  rule; he must perceive the cost of violation

8

as greater than the perceived benefit; and he must be able and willing to bring such knowledge to bear on his conduct decision at the time of the offense." Paul H. Robinson & John M. Darley, The Role of Deterrence in the Formulation of Criminal Law Rules: At Its Worst When Doing Its Best, 91 Geo. L.J. 949, 953 (2003).

A prison sentence exceeding time served for Angelo will not likely deter others and Angelo understands that the cycle of deportation and reentry is not likely to end well for him or his family.

3. Incapacitation

Section 3553(a)(2)(C) requires that the sentence imposed be sufficient, but not greater than necessary, "to protect the public from further crimes of the defendant." This provision reflects a third traditional justification of sentencing—incapacitation. Feinberg, The Federal Guidelines and the Underlying Purposes of Sentencing, 3 Fed. Sent'g Rep. 326, supra at 326.

Additional incapacitation for Angelo will be a significant setback. He has lost his job, income and has come to the realization that despite the desire to employ illegal immigrants like Mr. Ainaga-Jaspe, the cost far outweigh any benefits.  He needs to return and restart his life in Venezuela as soon as possible.

9

4. Rehabilitation

The sentencing court must consider the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Imprisonment generally is "not an appropriate means of promoting correction and rehabilitation" 18 U.S.C. § 3582(a); see also S. Rep. 98-225, at 76-77 (same); Tapia v. United States, 131 S. Ct. 2382, 2384, 180 L. Ed. 2d 357 (2011) (same).

C. Sentence Disparities

Congress has emphasized "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The key word in discussing unwarranted sentence disparities is unwarranted.'" S. Rep. 98-225 at 161. The presentence report notes that of over 994 similar individuals, the courts have imposed an average and median sentence of 9 months.

F. L ETTERS IN SUPPORT

The defense is awaiting a number of letters from family and other members of the community for the court to consider. The defense intends to include the letter from Angelo.

CONCLUSION AND SENTENCING RECOMMENDATION

A sentence of time served would be sufficient but not greater than necessary to accomplish the 18 USC Sec. 3553(A) factors and will allow Angelo the chance to return to Venezuela to seek employment and to begin again to continue to support his family in the best manner he can.

Respectfully submitted,

s/Sanford A. Schulman
SANFORD A. SCHULMAN
Attorney for Defendant:
　　ANGELO AINAGA-JASPE
500 Griswold Street, Suite 2340
Detroit, Michigan 48226
(313) 963-4740
saschulman@comcast.net

Date: August 21, 2025